**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ASPECT SOFTWARE PARENT, INC., | ) |
| | ) Case No. 16-10597 (MFW) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| BISK EDUCATION, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. No. 16-51510 (MFW) |
| | ) |
| ASPECT SOFTWARE, INC., | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**MEMORANDUM OPINION**[1]

Before the Court is the Second Partial Motion to Dismiss the Amended Complaint, filed by Aspect Software, Inc. (the "Debtor"). The Debtor seeks to dismiss the claims for fraudulent inducement, negligent misrepresentation, and unjust enrichment with prejudice pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, incorporated by Rules 7012 and 7009 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Second Partial Motion to Dismiss will be denied.

---

[1] The Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. Instead, the facts averred in the Complaint must be accepted as true for purposes of this Partial Motion to Dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

I.      BACKGROUND

Bisk Education, Inc. ("Bisk") provides online interactive education services, including web-based certificate and degree programs for various universities. Bisk's web-based business requires a customer relations management ("CRM") system to manage its customer interactions and data. In 2014, Bisk sought to upgrade its CRM system from an on-premises platform to a cloud-based platform and considered various companies to provide this service.

The Debtor provides workforce optimization solutions, among other CRM services. Bisk contends that the Debtor actively marketed its services to Bisk in 2013 and began to market more aggressively in 2014 after learning of Bisk's intention to upgrade its CRM system. The Debtor claimed to be able to provide various cloud-based, hosted and hybrid CRM solutions to facilitate customer service in real time on multiple technology platforms.

Between July and December 2014, Bisk communicated regularly with the Debtor's marketing team to discuss Bisk's needs regarding the development and implementation of the CRM system. In September 2014, Bisk met with the Debtor's marketing team, which proposed to customize and implement a next-generation, cloud-based CRM system. The parties met again in October 2014 to discuss the Debtor's ability to integrate the necessary work

optimization components with a CRM platform.  Bisk subsequently agreed to hire the Debtor and on December 30, 2014, the parties executed a Product and Service Agreement (the "PSA") containing, <u>inter</u> <u>alia</u>, a negotiated Expertise Clause, Merger Clause, and Limitation of Liability Clause.  In conjunction with the PSA, the parties executed three Statements of Work, which required the Debtor to provide project management and other professional services associated with the implementation of the CRM system over eight to ten weeks.  Bisk advanced approximately $3 million to the Debtor pursuant to the agreements.

Bisk contends that, instead of providing a next-generation cloud-based CRM system, the Debtor caused unreasonable delay and failed to timely implement a functional CRM platform, which resulted in additional and unnecessary costs to Bisk.  As a result, Bisk notified the Debtor that it was terminating the PSA on August 8, 2015.  On September 23, 2015, the Debtor sent a letter to Bisk memorializing the parties' communications regarding the problems with the project and the Debtor's resulting termination.

II.   <u>PROCEDURAL HISTORY</u>

On March 9, 2016, the Debtor filed a chapter 11 petition. (D.I. 1.)  On May 24, 2016, Bisk filed a proof of claim based on fraud and breach of contract theories.  On August 2, 2016, the

Debtor moved for a more definite statement of the claims contained in Bisk's proof of claim.  (D.I. 451.)  On September 1, 2016, the Court denied the motion for a more definite statement, but entered an Order directing Bisk to file an adversary complaint to liquidate its proof of claim.  (D.I. 502.)

On October 14, 2016, Bisk commenced the instant adversary proceeding, asserting claims for fraud in the inducement, negligent misrepresentation, breach of contract, breach of express warranties, and unjust enrichment.  (Adv. D.I. 1.)  Bisk seeks allowance of its proof of claim in an amount equal to its damages (to be determined by the Court), prejudgment interest, attorneys' fees and costs.

On November 23, 2016, the Debtor filed a Partial Motion to Dismiss, contending that the fraudulent inducement, negligent misrepresentation, and unjust enrichment claims failed to state a claim for relief pursuant to Rule 12(b)(6).  (Adv. D.I. 5.)  The Debtor argued that the tort claims were barred by the parties' contract as a matter of law and that equitable relief was not an appropriate remedy.  The Debtor further contended that Bisk failed to plead its fraud claims with particularity as required by Rule 9(b).  (Id.)  The Debtor also filed a counterclaim against Bisk, seeking $878,124.26.  (Adv. D.I. 4.)

On January 6, 2017, Bisk filed a Motion for Leave to Amend the Complaint, which was granted.  (Adv. D.I. 24.)  The Amended

Complaint was filed on March 24, 2017.  (Adv. D.I. 33.)

On March 21, 2017, the Debtor filed a Second Partial Motion to Dismiss pursuant to Rules 12(b)(6) and 9(b), renewing the arguments from its prior motion to dismiss.  (Adv. D.I. 31.)  A notice of completion of briefing was filed on April 18, 2017, and the matter is now ripe for decision.  (Adv. D.I. 44.)

III.    JURISDICTION

The Court has jurisdiction over this adversary proceeding, which involves the allowance of Bisk's timely filed claim.  28 U.S.C. §§ 1334 & 157(b)(2)(B).  See In re Tribune Media Co., C.A. No. 16-226(GMS), 2017 WL 2622743, at *4 (D. Del. June 16, 2017) ("The Supreme Court has consistently held that by simply filing a proof of claim, which triggers the 'allowance and disallowance of claims[]' [under] § 157(b)(2)(B), a creditor consents to the entry of final orders as to that claim . . . . Stern did nothing to upset that precedent - if anything[,] it further solidified it.").  The Debtor has not objected to the Court's exercise of jurisdiction over this adversary proceeding. See Local Bankruptcy Rule 7012-1.

IV. <u>DISCUSSION</u>

   A. <u>Standard of Review</u>

      1. <u>Rule 12(b)(6)</u>

A Rule 12(b)(6) motion challenges the sufficiency of the factual allegations in a complaint. <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993). <u>See</u> <u>Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.</u>, 988 F.2d 1157, 1160 (Fed. Cir. 1993) ("The purpose of [Rule 12(b)(6)] is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity.").

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Bell Atl. v. Twombly</u>, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556). The claim need not provide "'detailed factual allegations,' but [Rule 8] demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570). The Court's fundamental inquiry in this context is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support

the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-15 (1982).

    2.   Rule 9(b)

Rule 9(b) imposes a heightened pleading standard for allegations of fraud and requires "sufficient particularity to place the defendant on notice of the precise misconduct for which it is charged." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007). See FED. R. CIV. P. 9(b). Generally, plaintiffs must "support their allegations of . . . fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story' . . . the 'who, what, when, where and how' of the events at issue." In re Rockefeller Ctr. Props., Inc. Secs. Litig., 311 F.3d 198, 217 (3d Cir. 2002) (quoting In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1422 (3d Cir. 1997)).

The Court may base dismissal on either Rule 12(b)(6) or Rule 9(b). See, e.g., Anderson v. USAA Cas. Ins. Co., 221 F.R.D. 250, 252 (D.D.C. 2004) (citing Kowal v. MCI Commc'ns. Corp., 16 F.3d 1271, 1279 (D.C. Cir. 1994)). The moving party has the burden of demonstrating that dismissal of the complaint is appropriate. Joseph v. Frank (In re Troll Commc'ns., LLC), 385 B.R. 110, 117 (Bankr. D. Del. 2008).

B.  <u>Fraudulent Inducement and Negligent Misrepresentation</u>

Counts I and II of the Complaint assert claims for fraudulent inducement and negligent misrepresentation based on the Debtor's repeated misrepresentations of its extensive experience and expertise in the online education sector and its ability to implement a next-generation cloud-based CRM platform. Bisk contends that it never would have entered into the PSA but for such misrepresentations and that the Debtor knew, or should have known, that its representations of experience and expertise were false.  <u>See, e.g.</u>, <u>McMahan Secs. Co., LP v. FB Foods, Inc.</u>, No. 8:04-cv-1791-T-24TGW, 2006 WL 2659996, at *9 (M.D. Fla. Sept. 15, 2006) ("Florida law supports an action for fraud in the inducement premised upon false representations regarding a defendant's experience, qualifications, and/or expertise in a particular area when, as here, those claims concern a past or existing fact.").

Under Florida law, a claim for fraudulent inducement (or fraudulent misrepresentation) must allege: (1) a false statement of material fact; (2) made with knowledge that the representation is false; (3) with intent to induce another to act on the representation; and (4) injury to the party relying on the representation.  <u>See, e.g.</u>, <u>Moriber v. Dreiling</u>, 194 So. 3d 369, 373 (Fla. Dist. Ct. App. 2016) (citing <u>Butler v. Yusem</u>, 44 So. 3d 102, 105 (Fla. 2010)).  The plaintiff's reliance need not be

justifiable.  Butler, 44 So. 3d at 105.

The elements of a claim for negligent misrepresentation are almost identical, but differ in two major respects: the false statement of material fact may be made <u>without</u> knowledge of truth or falsity, and the plaintiff must have <u>justifiably relied</u> on the representation.  <u>See</u> <u>Creative Am. Educ., LLC v. Learning Experience Sys., LLC</u>, 9:14-CV-80900, 2015 WL 2218847, at *4 (S.D. Fla. May 11, 2015).

    1.    <u>Failure to State a Claim</u>

        a.    <u>Elements of the claims</u>

The Debtor argues that the claims for fraudulent inducement and negligent misrepresentation fail to state a claim for relief under Florida law.  FED. R. CIV. P. 12(b)(6); FED. R. BANKR. P. 7012.  The Debtor contends that they are deficient because they are devoid of allegations that its representatives made false representations; that its representatives knew (or should have known) that the representations were false; and that Bisk relied on those representations.

Bisk responds that the Amended Complaint does in fact satisfy notice pleading requirements because it alleges that the Debtor knew, or should have known, that its representatives made false statements of material fact because the Debtor's method of performing the contract was different from what was promised. Bisk contends that the Debtor understood the distinction between

9

designing a next-generation unified CRM system (as promised to Bisk) and implementing a contact center platform intended to create a CRM system (as the Debtor actually provided to Bisk). In addition, Bisk contends that the Amended Complaint sufficiently alleges that Bisk relied on the misrepresentations because it alleges that it would not have selected the Debtor to perform such a crucial project but for its purported expertise.

The Court agrees with Bisk and concludes that, accepting the factual allegations as true, Bisk has adequately pled claims for fraudulent inducement and negligent misrepresentation. The Amended Complaint alleges that the Debtor deliberately misrepresented its experience, expertise, and core competencies with cloud-based CRM systems in order to win the Bisk contract. (Adv. D.I. 33, ¶ 37.) It further alleges that Bisk relied on those misrepresentations in awarding the contract to the Debtor. (Id. at ¶26.) Finally, the Amended Complaint alleges generally that the Debtor was knew, or should have known, that the misrepresentations of its representatives were false. (Id. at ¶¶ 43 & 49.) The Court disagrees with the Debtor that Bisk's allegations of knowledge and intent are inadequately pled. State of mind may be averred generally so long as the facts give rise to a strong inference that the defendant possessed the requisite intent. See Burlington, 114 F.3d at 1418. Accordingly, the Court concludes that Bisk states a claim for fraudulent

inducement and negligent misrepresentation because it sufficiently alleges that the Debtor knowingly misrepresented its competency to perform the contract and that Bisk relied on such representations when it selected the Debtor for the project.

### b. Clauses in the Contract

The Debtor additionally argues that even if the Amended Complaint does allege reliance on the Debtor's misrepresentations of expertise, Bisk cannot prove such reliance as a matter of Florida law because the PSA contains a Merger Clause and an express, bargained-for Expertise Clause. See, e.g., B & G Aventura, LLC v. G-Site Ltd. P'ship, 97 So. 3d 308, 309-10 (Fla. Dist. Ct. App. 2012) (holding that a contract which reflects a complete and final statement of the matters governed by the contract forecloses reliance on pre-execution representations on those same subjects).

Bisk responds that its claims are viable because an integration clause does not bar claims for fraudulent inducement or negligent misrepresentation as a matter of Florida law. See, e.g., MeterLogic, Inc. v. Copier Sols., Inc., 126 F. Supp. 2d 1346, 1363 (S.D. Fla. 2000) (denying motion to dismiss fraudulent inducement claim where subsequent contract had an integration clause); Adios Aviation, LLC v. El Holdings I, LLC, No. 15-61218-CIV-DIMITROULEAS, 2015 WL 12564317, at *7 (S.D. Fla. Sept. 29, 2015) (same).

The Court agrees with Bisk that the Merger Clause in the PSA does not bar its fraudulent inducement or negligent misrepresentation claims.  As the Court noted in MeterLogic:

> [I]ntegration clauses do not "cloak defendants with immunity" from fraudulent statements.  Florida law is clear that if a party alleges that a contract was procured by fraud or misrepresentation as to a material fact, an integration clause will not make the contract incontestable, and the oral representations may be introduced into evidence to establish fraud.

126 F. Supp. at 1363 (citations omitted).

The Court concludes that the misrepresentations Bisk alleges are not being offered to contradict the terms of the PSA, but rather to demonstrate that the contract was procured by fraud or misrepresentation of material fact.  Therefore, the Merger Clause in the PSA does not preclude those claims.  Id.

The Debtor argues, however, that the Expertise Clause in the PSA does deal with the subject matter of the alleged misrepresentations and, therefore, the claims based on those misrepresentations are precluded.  See, e.g., Adios Aviation, 2015 WL 12564317, at *7 (noting that under Florida law "reliance on certain misrepresentations made prior to the execution of an agreement [is] unjustifiable only when the terms of the subsequently entered agreements were clear, unambiguous, and specific to the exact misrepresentation being claimed.").

The Expertise Clause in the PSA states that Bisk engaged the Debtor to "provide expert advice and recommendations, and to

12

ensure that plans, ideas, designs, implementation and other suggestions relating to the Services or Deliverables and proposed by Customer are appropriate, consistent with industry best practices and standards, and are in the best interest of the Customer." (Adv. D.I. 32, ¶ 21.)

The Court notes that the Expertise Clause in the PSA does not expressly state that the Debtor is an expert in cloud-based CRM technology. Nor is that Clause the type of "clear, unambiguous, and specific" contractual term that the Florida courts have held precludes a fraudulent inducement claim. Adios Aviation, 2015 WL 12564317, at *7. Cf. Osan v. Verizon Fla. LLC, 8:15-cv-104-T-36TGW, 2016 WL 2745001, *4 (M.D. Fla. May 11, 2016) (alleged misrepresentations that claimant would be paid for vacation time contradicted by separation agreement that stated it covered all claims arising from employment); Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc., 262 F. Supp. 1334, 1342 (S.D. Fla. 1999) (prior representation that contract would be extended indefinitely contradicted by contract which stated a finite term); Barnes v. Burger King Corp., 932 F. Supp. 1420, 1427-28 (S.D. Fla. 1996) (prior statements that Burger King would not put another franchise near the plaintiff's were expressly contradicted by the contract which stated that the plaintiff would have no exclusive geographic area); Goodall v. Whispering Woods Center, LLC, 990 So. 2d 695, 698 (Fla. Dist. Ct. App. 2008)

(alleged misrepresentation of height of ceilings in building contradicted by express terms of the contract); Hillcrest Pac. Corp. v. Yamamura, 727 So.2d 1053, (Fla. Dist. Ct. App. 1999) (alleged misrepresentations about what price seller would accept for property expressly contradicted by contract sales price which was negotiated at length by buyer with seller). See also MeterLogic, 126 F. Supp. at 1363 (misrepresentations that contracting party's parent would provide it with the technology and funding necessary for it to perform the contract were not covered by any of the terms of the contract and therefore claim for fraudulent inducement was not dismissed); Adios Aviation, 2015 WL 12564317, at *7 (misrepresentations that plane had no repair history not contradicted by clause providing sale without any warranties).

Therefore, the Court concludes that neither the Merger Clause nor the Expertise Clause preclude Bisk's claims for fraudulent inducement and negligent misrepresentation.

            c.    Economic Loss Doctrine

The Debtor additionally contends that the claims for fraudulent inducement and negligent misrepresentation should be dismissed pursuant to Rule 12(b)(6) as a result of Florida's economic loss doctrine, which precludes a claim based on tort which is identical to a claim for breach of contract.  The Debtor argues that Bisk does not and cannot allege any tort separate and

independent of the breach of contract claim. See <u>Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.</u>, 110 So. 3d 399, 402 (Fla. 2013) ("the economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses").

The Florida Supreme Court explained the basis for the economic loss rule thus:

> The prohibition against tort actions to recover solely economic damages for those in contractual privity is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort.

<u>Indem. Ins. Co. of NA v. Am. Aviation, Inc.</u>, 891 So.2d 532, 536 (Fla. 2004). The Debtor contends that Bisk is doing exactly that: by pursuing a fraud claim, Bisk seeks to avoid the cap on damages ($163,813.45) contained in the PSA. (Adv. D.I. 32.)

Bisk responds that it is not seeking damages under the contract. Rather, the Amended Complaint alleges a separate cause of action for fraud based on the Debtor's repeated misrepresentation of its ability to meet Bisk's needs in order to win the Bisk contract, even though the Debtor never actually intended to provide a cloud-based CRM system because it lacked the experience to do so. Bisk alleges that it relied on the Debtor's representations of experience in selecting its offer over others. <u>Tew v. Chase Manhattan Bank, N.A.</u>, 728 F. Supp.

1551, 1564, as amended, 741 F. Supp. 220 (S.D. Fla. 1990) ("Under Florida law, making a representation, which is later determined to be false, and is made without regard to truth or falsity of the representation, will support a fraud claim.").

The Court finds that Bisk's fraud claims (Counts I and II) are not barred by the economic loss doctrine for several reasons. First, the Florida Supreme Court has acknowledged that a claim for fraudulent inducement is not barred by that doctrine. Tiara, 110 So. 2d at 402 ("The economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action. . . . Fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract."), quoting HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So. 2d 1238, 1239 (Fla. 1996). See also Am. Aviation, 891 So. 2d at 537 (holding that torts committed independently of the contract breach, such as fraud in the inducement, are not barred by the economic loss rule); Moransais v. Heathman, 744 So. 2d 973, 983 (Fla. 1999) (same).

Second, the Florida Supreme Court has expressly restricted the economic loss doctrine to products liability cases. Tiara, 110 So. 2d at 407 ("we now take this final step and hold that the economic loss rule applies only in the products liability context.").

Therefore, the Court concludes that the fraudulent inducement and negligent misrepresentation claims in Counts I and II are not barred by the economic loss rule.

Even if (as the concurring opinion in Tiara contends) there is still a prohibition in Florida common law against bringing tort claims for what are really breach of contract claims, the Court concludes that the claims at issue are not merely contract claims. Tiara, 110 So. 2d at 408.

Bisk's fraud claims are premised on the Debtor's misrepresentation of its ability to provide a cloud-based CRM system, they are not based on breach of the contract. Bisk's contention is not that the Debtor breached the contract but that Bisk would never have entered into the contract if it had known that the Debtor did not have an expertise in cloud-based CRM systems.

Accepting the facts alleged by Bisk as true, these misrepresentations are "torts independent of the contractual breach . . . . requir[ing] proof of facts separate and distinct from the breach of contract." HTP, 685 So. 2d at 1239. Therefore, the Court concludes that they are not barred under Florida law. Id. As a result, the Court will deny the motion to dismiss Counts I and II.

C. <u>Unjust Enrichment</u>

Count V of the Complaint asserts a claim for unjust enrichment for the Debtor's acceptance and retention of the $3 million advance payment made pursuant to the PSA while it conferred no value or benefit on Bisk in return.

The Debtor seeks to dismiss Count V pursuant to Rule 12(b)(6), contending that Bisk cannot attach an equitable claim (Count V) to a breach of contract claim (Count III) for which an adequate legal remedy is available.

Bisk responds that dismissal of the unjust enrichment claim is premature until the existence of an express breach of contract claim is established.

Under Florida law, a plaintiff generally cannot pursue an unjust enrichment claim if there is an express contract concerning the subject matter. <u>See, e.g.</u>, <u>Diamond "S" Dev. Corp. v. Mercantile Bank</u>, 989 So. 2d 696, 697 (Fla. Dist. Ct. App. 2008). However, plaintiffs are not prohibited from asserting a claim for unjust enrichment in the alternative. <u>Shibata v. Lim</u>, 133 F. Supp. 2d 1311, 1317 (M.D. Fla. 2000) (both federal and Florida law permit pleading in the alternative). <u>See also</u> FED. R. CIV. P. 8(a)(1). Nonetheless, under Florida law a plaintiff may plead a claim for unjust enrichment in the alternative only when one of the parties asserts that the contract governing the dispute is invalid. <u>ATA-CIF, LLC v. IECUBED, LLC</u>, No. 8:11-cv-

603-T-33EAJ, 2011 WL 6217508, at *2 (M.D. Fla. Dec. 14, 2011).

In this case, Bisk contends that the PSA was invalid because it was fraudulently induced to enter into that agreement by the actions of the Debtor.  Accordingly, the Court concludes that Bisk may plead unjust enrichment in the alternative.  See Williams v. Wells Fargo Bank N.A., 11-21233-CIV, 2011 WL 4901346, at * 6 (S.D. Fla. Oct. 14, 2011) (allowing pleading of unjust enrichment in the alternative where defendant contended that it was not a party to the contract).  As a result, the Court will deny the Partial Motion to Dismiss Count V.

V.   CONCLUSION

For the reasons set forth above, the Second Partial Motion to Dismiss will be denied.

An appropriate Order follows.

Dated:    September 5, 2017

BY THE COURT:

*Mary F. Walrath*

Mary F. Walrath
United States Bankruptcy Judge